## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**PERDIDO SUN CONDOMINIUM ASSOCIATION, INC.,**
**a Florida not-for-profit corporation,**

                    **Plaintiff,**

**v.**                                                    **Case No. 3:06cv318/MCR**

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,**
**an Ohio corporation,**

                    **Defendant.**[1]

_____/

## O R D E R

In this flood insurance dispute plaintiff Perdido Sun Condominium Association, Inc., ("Perdido Sun" or "plaintiff") sues defendant Nationwide Mutual Fire Insurance Company ("Nationwide" or "defendant") for breach of contract and declaratory relief.[2]  Presently before the court are Nationwide's motion for summary judgment and Perdido Sun's motion for partial summary judgment, as well as the parties' respective responses in opposition. For the reasons discussed below, the court grants Nationwide's motion and denies Perdido Sun's motion.

_____

[1]  When it initially filed this case Perdido Sun also sued the Director of the Federal Emergency Management Agency ("FEMA").  As presently reflected in the style of the case this defendant is no longer a party, having been voluntarily dismissed by Perdido Sun.  The style also reflects Nationwide's correct name.

[2]  Perdido Sun asserts that federal question jurisdiction over its claims is conferred pursuant to 28 U.S.C. § 1331 because "the disputes arise from the procurement of flood insurance pursuant to 42 U.S.C. § 4001, et. seq., the National Flood Insurance Act" ["NFIA"]. Doc. 1 at 2.

## BACKGROUND

The following facts are recited in the light most favorable to plaintiff or, except as noted, are undisputed.[3]  Perdido Sun's property (which consists of common area real property, a condominium building constructed in 1984, furniture, fixtures, and equipment), was insured under a Standard Flood Insurance Policy ("SFIP") first issued by Nationwide in 1985.[4]  According to a 1985 elevation certificate issued by FEMA in accordance with its Flood Insurance Rate Map ("FIRM"), the property was located in Zone A11.[5]  In January 1998 FEMA inspected the property and determined that pursuant to a new, redrawn FIRM the property was not located in Zone A11 but rather was located in Zone V20, a higher risk

---

3  At summary judgment this court must view the facts in the light most favorable to the nonmoving party.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  The court therefore does so here, drawing those facts from the pleadings, depositions, and other evidentiary materials on file.  Nevertheless, the court observes that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. See Montout v. Carr, 114 F.3d 181, 182 (11th Cir. 1997).

4  Nationwide is the "Write Your Own" ("WYO") insurer from which Perdido Sun purchased its SFIP through the National Flood Insurance Program ("NFIP").  The NFIA established the NFIP and FEMA, which is charged with administering the NFIP, by regulation has promulgated the SFIP and provided for marketing and claims adjustment by private insurers operating as WYO companies. 44 C.F.R. § 62.23. The WYO companies issue SFIPs in their own names as insurer, and they arrange for the adjustment, settlement, payment and defense of all claims arising from the policies, with the federal government acting as the guarantor and reinsurer. See  § 61.13(f); § 62.23(d); see also Gowland v. Aetna, 143 F.3d 951, 953 (5th Cir. 1998). Thus in issuing SFIPs WYO companies act as the fiscal agent of the United States government.  See Sanz v. United States Security Insurance Co., 328 F.3d 1314, 1316 (11th Cir. 2003). Congress has specifically authorized FEMA to appoint service agents to assist the NFIP in issuing and processing flood insurance applications and claims. See  42 U.S.C. § 4071 (authorizing FEMA director to make arrangements to carry out flood insurance program by utilizing "insurance companies and other insurers, insurance agents and brokers, and insurance adjustment organizations, as fiscal agents of the United States."). Federal regulations also provide that "a WYO Company shall use its own customary standards, staff and independent contractor resources, as it would in the ordinary and necessary conduct of its own business affairs . . . ." 44 C.F.R. 62.23(e).
A copy of Perdido Sun's SFIP, No. 77-09486649, may be found at Document # 1-2 of the docket.  The policy reflects that the full amount of flood coverage is $10,665,700.00.

5  Perdido Sun contends that Zone A11 is not a special flood hazard area ("SFHA"), while Nationwide submits that it is.  As best the court can determine from the virtually indecipherable copy of the 1985 elevation certificate filed by the parties, the certificate provides no support for Perdido Sun's position. The NFIP document Nationwide has submitted, however, plainly indicates that Zone A11 is a SFHA.  Accordingly, assuming this issue is material, the court concludes there is no genuine issue of fact with respect to it and finds that Zone A11 is a SFHA.

Case No. 3:06cv318/MCR

zone.[6]  By letter dated May 12, 1998, FEMA informed Nationwide of its inspection findings and instructed it to contact the underwriter to advise that Nationwide had re-rated the policy according to the property's current zoning.[7]   The letter also noted that "WYO companies are expected to correct the policies as soon as possible; but no later than the next renewal cycle."[8]   The letter also advised that to appeal the FIRM classification, supporting documentation should be sent to the underwriter; after the underwriter had reviewed the documentation, the file would be referred to the Federal Insurance Administration ("FIA") for review and issuance of a binding, written decision.

Perdido Sun, through its Nationwide agent Eddie Zarahn, wrote to the underwriter in April 1999 to challenge the Zone V20 classification.  In his letter Mr. Zarahn referenced the 1977 FIRM that was in effect at the time the condominium was constructed in 1984 that indicated the property was located in Zone A11.  Mr. Zarahn requested that Perdido Sun "be grandfathered in as Zone A11, i.e. that "the zone be changed back to A11 and [the] premium adjusted accordingly."[9]   There is no evidence that Mr. Zarahn or Perdido Sun received a response to the letter, that Perdido Sun's file was referred to the FIA for review,

---

[6]  The record contains references to both Zone V20 and Zone VE.  It is undisputed that any variation in these terms is not significant, however, because some FIRMS refer to Zone VE while others designate the same areas as Zone V, 1 through 30.

There are, however, important differences between property that is classified as Zone A versus Zone V.  Nationwide states, and submits evidence in support that Perdido Sun has not refuted, that annual premiums are generally greater in Zone V because this zone pertains to coastal high hazard areas that are the most susceptible to being inundated by tidal floods. Nationwide notes that "[a]ccording to one FEMA document published in 2000, annual premiums for $100,000 of flood insurance coverage for a residential single family home (post-FIRM) in Zone V would cost $850.  By contrast, a similarly-situated home in Zone A would cost only $431." Doc. 45, Exh. F.

Second, the SFIP restricts coverage for property in a building enclosure that is located below the lowest elevated floor.  See id., Exh. H (SFIP Residential Condominium Building Association Policy, Sec. III, A, 8).   The determination of the lowest floor for rating varies based on the FIRM zone.  As explained in the NFIP Flood Insurance Manual, for an elevated building located in Zone A, "'the lowest floor used for rating is the lowest elevated floor.'" Id., Exh. G.  For an elevated building located in Zone V, however,"the floor of an enclosed area below the lowest elevated floor is the building's lowest floor." Id.  Thus whether a building is in Zone A or Zone V will determine which floor is defined as its lowest floor and, consequently, whether coverage for flood damage to property below that level may be restricted.

[7]  Doc. 45, Exh. D.

[8]  Id.

[9]  Doc. 54, Exh. F.

that the FIA issued a written decision on any appeal to the Zone V20 classification, or that Nationwide complied with FEMA's directive to correct the SFIP to reflect the property's updated zoning.  It is undisputed, however, that Nationwide continued to assess Perdido Sun premiums based on the Zone A11 classification and to accept payment from Perdido Sun for such premiums after it was notified by FEMA of the property's Zone V20 classification under the redrawn FIRM.[10]

Hurricane Ivan struck the Northwest Florida area on or about September 16, 2004. Perdido Sun's property sustained severe flood damage as a result of storm surge generated by the hurricane.  Perdido Sun advised Nationwide of its damages and timely filed a proof of loss in the amount of $3,500,000.  Perdido Sun was unable to locate a copy of its elevation certificate at the time of its claim and therefore hired a surveyor to prepare a new one.  The new certificate showed the property was located in Zone VE.  By letter dated October 27, 2004, a Nationwide representative contacted the Florida Flood Response Office.[11]  The representative noted in her letter that there was a discrepancy between the new elevation certificate, which reflected that the building was Zone VE, and Perdido Sun's loss notice, which identified the classification as Zone A11.  She advised that if, after the Response Office's review, "a determination of coverage is still questionable we would like to request an adjuster assist on the part of a NFIP General Adjuster to inspect this property with us and advise as to where to apply the limitations of coverage for areas of Post-FIRM elevated buildings as set forth in the policy."[12]  On November 30, 2004, a NFIP Field Claims Operations representative reported that he had inspected Perdido Sun's property and the elevation certificate indicated that "the bottom of the lowest floor is at an elevation of 19.42 ft.  As I read the elevation certificate, it appears that the restricted coverage applies below this level.  Of course, [i]f the risk is located in a VE zone, this means no coverage for the machinery located below this level." [13]  Nationwide adjusted

---

[10] Indeed, the Declarations Page of Perdido Sun's SFIP for the period from March 25, 2005, through March 25, 2006, reflects that the property is located in FIRM Zone A11. Doc. 42, Exh. B.

[11] Doc. 45, Exh. O.

[12] Id.

[13] Doc. 45, Exh. I.

Perdido Sun's claim in accordance with this report, applying the restricted coverage provisions of Perdido Sun's SFIP to refuse payment for losses that occurred below an elevation of 19.42 feet.  For certain losses occurring above that elevation, Nationwide paid Perdido Sun a total of $392,402.80.  Following Hurricane Ivan, Perdido Sun asked FEMA to reassess its Zone V classification by filing a Letter of Map Amendment ("LOMA").  FEMA denied the LOMA on October 20, 2005, finding that pursuant to a FIRM dated February 23, 2000, the property was located in Zone VE.

Perdido Sun filed this suit in July 2006.   In Count I of its complaint Perdido Sun alleges that Nationwide has breached its contractual duty under the SFIP by refusing to pay Perdido Sun's $3,500,000 claim fully or in a timely manner and by engaging in a deliberate course of conduct intended to delay and minimize the claim.  As relief, Perdido Sun seeks judgment for damages in the amount of $3,107,597.20.  Count II is a claim for declaratory relief in which Perdido Sun argues that Nationwide has acted in bad faith and in an arbitrary and unfair manner regarding the zoning and restricted coverage issues.[14] It seeks an order declaring that its current claim should be adjusted under a Zone A11 classification and that such classification should remain in force as long as Perdido Sun's SFIP is maintained.[15]

 **SUMMARY JUDGMENT STANDARD**

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A factual dispute is "`genuine' if the evidence is such that a reasonable jury could return a verdict for the

---

[14]  In its complaint, in addition to alleging that Nationwide has wrongly failed to pay the full claim by refusing to honor Perdido Sun's "grandfathered in" Zone A11 classification, plaintiff asserts that Nationwide has wrongly denied its claim based on the SFIP's "restricted coverage" provision.  According to the complaint, engineering reports reflect that, with the exception of the service floor level of the building, all floors were built on elevated concrete slabs, not on slabs poured directly on grade.  Thus Perdido Sun alleges that these floors were not built on artificial grade and therefore should not be subject to restricted coverage on that basis.

[15]  The complaint also contains Count III, a claim for negligence.  By order dated August 30, 2007, the court granted Nationwide's motion to dismiss this claim, as well as all of Perdido Sun's other claims for extra-contractual relief.

nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986).   A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." Anderson, 477 U.S. at 248; Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  Nevertheless, a general denial unaccompanied by any evidentiary support will not suffice. See, e.g., Courson v. McMillian, 939 F.2d 1479 (11th Cir. 1991); Hutton v. Strickland, 919 F.2d 1531 (11th Cir. 1991). Moreover, the existence of a scintilla of evidence in support of the nonmovant's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 252.

**DISCUSSION**

In its motion for partial summary judgment, Perdido Sun argues that the court should enter a declaratory judgment stating that it is entitled to past and future Zone A11 flood insurance coverage for two related reasons:  (1)  the SFIP initially issued to Perdido Sun in 1985, and each renewal of the policy since then, has identified the property as being in Zone A11 and thus this classification has been "grandfathered in"; and (2) Nationwide is estopped from denying coverage because, although FEMA sought to change the FIRM classification in 1998, FEMA was provided with proof of the original flood classification and for six years continued to accept premiums based on Zone A11 coverage.

In opposition, and in support of its own motion, Nationwide maintains that under FEMA's "grandfather rules" Perdido Sun has been permitted to continue paying the lower premiums associated with the property's original Zone A11 classification only.  The property's reclassification to Zone V under the redrawn FIRM, however, means that in adjusting a loss due to flooding Nationwide is required to apply the standards and definitions applicable to Zone V properties, including the provisions of the SFIP that pertain to restricted coverage.  Pursuant to these restricted coverage provisions, Perdido Sun cannot recover for damage to property that is located on its lowest floor, which is defined for Zone V as the enclosed area below the lowest elevated floor – in this case, that

involves property under the elevation of 19.42 feet.  Moreover, Nationwide cannot be estopped from denying coverage because this theory does not apply in cases in which the insurer is an agent of the United States, as is true of Nationwide with respect to  Perdido Sun's SFIP.  Nationwide contends that because it properly adjusted Perdido Sun's flood damage claim based on the federal standard for properties located in Zone V, its motion for summary judgment should be granted and Perdido Sun's cross motion for partial summary judgment should be denied.

**FEMA'S Grandfather Rules**

As set out in its Flood Insurance Manual, FEMA's grandfather rules provide:

C.  Map "Grandfather" Rules – Effect of Map

Revisions on Flood Insurance Rates

A community will occasionally make structural improvements (dams, levees, etc.) to reduce the potential effects of flooding; experience new development aggravating the flooding situation, thereby expanding the floodplain; revise geographical boundaries resulting in the designation of additional flood hazard areas; or provide information to better delineate the BFE [base flood elevation] and/or flood insurance risk zones. When these situations occur, the FIRM is revised and republished. The implementation of a new FIRM raises the question –

HOW DOES THE NEW MAP AFFECT FLOOD INSURANCE RATES?

1. Grandfather Rules

To recognize policyholders who have built in compliance with the FIRM and/or remained loyal customers of the NFIP by maintaining continuous coverage, the Federal Emergency Management Agency has "Grandfather rules." These rules allow such policyholders to benefit in the rating for that building. For such buildings, the insured would have the option of using the current rating criteria for that property or having the premium rate determined by using the BFE and/or flood zone on the FIRM (old map) in effect when the building was originally constructed (for those built in compliance) or when coverage was first obtained (for those with continuous coverage). This results in a cost savings to insureds when the new map revision would result in a higher premium rate.

2.  General Rule of Rating

Always use the new map if it will provide a more favorable premium (lower rate).

3.  Existing Business – Renewal Policies

Policies written to cover either Post-FIRM or Pre-FIRM construction may be renewed and rated based on the FIRM and/or BFE in effect when the policy was initially rated as long as the coverage is continuous and the building has not been altered to make the reference level lower than the BFE on that FIRM. . . .

Doc. 45, Exh. J (FEMA Flood Insurance Manual, Section XIV. Special Rating Situations, pp.  21-22.

As noted, Perdido Sun maintains that its original Zone A classification was in effect at the time Hurricane Ivan damaged its property in September 2004 and must be used in adjusting its flood losses because the classification was "grandfathered in."[16]   More particularly, Perdido Sun argues that although FEMA may from time to time redraw the FIRM, nothing in the NFIA or its supporting regulations authorizes FEMA to retroactively alter the terms of an existing SFIP.  In this case, the Declarations Page of Perdido Sun's SFIP provides that its property is in Zone A11 and, pursuant to 44 C.F.R. § 61.13, an amendatory endorsement is required in order to change that or any term of its policy.[17]  According to Perdido Sun, such an amendatory endorsement properly would be made at the time the policy is renewed and would provide the insured with notice and an opportunity to seek replacement coverage, but no such endorsement was ever made to its policy.

_____

[16]  It is undisputed that Perdido Sun's condominium building was built in compliance with the FIRM in effect at the time of construction in 1984 and that Perdido Sun's SFIP has been continuously maintained since its initiation in 1985.  As indicated in Section XIV of the Flood Insurance Manual, both of these conditions must be met in order to satisfy the requirements of the grandfather rules.

[17]  44 C.F.R. § 61.13(d), provides:

 Waivers. The Standard Flood Insurance Policy and required endorsements must be used in the Flood Insurance Program, and no provision of the said documents shall be altered, varied, or waived other than by the express written consent of the Administrator through the issuance of an appropriate amendatory endorsement, approved by the Administrator as to form and substance for uniform use.

Perdido Sun also contends that interpreting FEMA's grandfather rules as impacting premiums only – as Nationwide does – is too narrow a reading. Rather, according to Perdido Sun, the relevant portion of the rule clearly distinguishes between "rating criteria" – which it maintains refers to the BFE and flood zone – and the "premium rate," which Perdido Sun contends is a benefit derived from the application of the rating criteria. Perdido Sun submits that while one benefit of being able to choose the most favorable rating criteria is a lower cost premium, "nothing in the grandfather rule limits the insured's choice only to favorable premium rates or otherwise excludes retention of the more favorable coverage associated with the rating criteria."[18]  The choice given to the insured, Perdido Sun argues, is which rating criteria to use, not just which premium rate applies. Furthermore, according to Perdido Sun, Nationwide's interpretation of the grandfather provision is inconsistent with FEMA's limited grant of administrative rulemaking authority because it would permit retroactive alterations to coverage simply by changing the FIRM. By allowing existing policyholders to retain their original ratings and applying updated FIRM classifications to new policies only, however, FEMA properly exercises its authority.  In the alternative, Perdido Sun contends that the grandfather rules are susceptible to more than one reasonable interpretation, that being that the insured may select the rating criteria. Given such an ambiguity, according to Perdido Sun, the rules should be read in its favor.

The court disagrees with Perdido Sun's interpretation of the grandfather rules.  The rules only permit a qualified policyholder to retain the benefit of the lower premium rate assessed under its prior FIRM classification even though a new FIRM would otherwise result in the policyholder's being charged a higher premium; nothing in the rules states or implies that the policyholder may have its flood losses adjusted under the prior FIRM classification.  Such a reading is supported by the plain language of Section XIV(C)(1). The question specifically posed in Section XIV(C) (i.e., "How Does the New Map Affect Flood Insurance Rates?") clearly identifies the section's focus: premium rates.  Moreover, by its own terms this section provides that with respect to properties affected by a redrawn FIRM, the policyholder has "the option of using the current rating criteria for that property or having the premium rate determined by using the BFE and/or flood zone on the FIRM

_____

[18]  Doc. 53 at 5.

. . . ." Both options refer to the determination of the "premium rate."  Moreover, the rules specifically provide that the intended result is "a cost savings to insureds when the new map revision would result in a higher premium rate."  The rules do not mention any other intended or secondary purpose, such as allowing the insured to have its flood losses adjusted in accordance with standards applicable to the more favorable prior FIRM zone. Section XIV(C)(1) read liberally – and under the ordinary rules of statutory construction – reasonably permits no other conclusion.  Additionally, the placement of the grandfather rules within the Special Rating Situations section as well as the other references in this section regarding the effect on premiums resulting from changes to the FIRM, lend support to the view that the grandfather rules only serve to give policyholders the benefit of being charged lower premiums under their prior FIRM zone and nothing more.  Further, this interpretation of the rules is not inconsistent with FEMA's limited grant of administrative rulemaking power.  For the reasons just stated, the rules do not authorize retroactive alterations to coverage.  Rather, the rules authorize qualified policyholders to receive the prospective benefit of continuing to pay the less expensive premiums associated with their prior, lower risk flood zone rather than having to pay the more expensive premiums generally assessed for coverage in their new, higher risk zone. Finally, the court concludes that § 61.13(d) does not require that an amendatory endorsement be issued in order for Perdido Sun's losses to be adjusted under Zone V rather than Zone A criteria.  Section 61.13(d) provides that no provision of the SFIP may be altered or varied other than by the express written consent of the FEMA Administrator through the issuance of an amendatory endorsement that has been approved by the Administrator as to form and substance for uniform use. The Declarations Page is considered part of the SFIP and, in part, contains information supplied by the policyholder.[19]  In this case, even if the information on the Declarations Page provided by Perdido Sun which states its property is located in Zone A11 is considered a provision of the SFIP, the provision was not "varied" or "altered" by Nationwide when it adjusted the property under the standards and definitions of Perdido

---

[19] See Article II(10) of Perdido Sun's SFIP at Doc. 42, Exh. A (defining the Declarations Page as a "computer-generated summary of information you provided in the application for insurance. The Declarations Page also describes the term of the policy, limits of coverage, and displays the premium and our name. The Declarations Page is a part of this flood insurance policy"); see also 44 C.F.R. Pt. 61, App. A(2), Art. II(B)(10) (same).

Sun's proper and actual FIRM zone classification at the time of the loss in 2004, Zone VE.

For all of the foregoing reasons, the court finds that under FEMA's grandfather rules, Perdido Sun was entitled to continue to pay SFIP premiums based on its prior Zone A11 classification but was not entitled to have its flood losses adjusted under that classification; rather, the claim was properly adjusted under Zone VE standards and definitions.

**Equitable Estoppel**

Perdido Sun argues that Nationwide should be estopped from denying its full claim because, based on the events involved and Nationwide's conduct, it "had every reason to believe it was not subject to restricted coverage."[20]  In support, Perdido Sun points out that its property was originally classified as being in Zone A11, its SFIP continued to show it was in Zone A11 as late as March of 2006, the FIA never responded to Perdido Sun's 1998 protest to the zone reclassification, and Nationwide continued to charge Perdido Sun Zone A11 premiums.  According to Perdido Sun, Nationwide effectively confirmed Perdido Sun's interpretation of the SFIP that its claims would be adjusted under the more favorable zoning and neither FEMA nor Nationwide ever advised that only its premiums were grandfathered.

A claim against a WYO insurer is a claim against the federal government for the purposes of applying the doctrine of equitable estoppel.  See Gowland, 143 F.3d at 955. In Sanz, the Eleventh Circuit commented that "the Supreme Court has yet to announce a per se rule that equitable estoppel is never available against the Government" but also noted that the Supreme Court "consistently has denied efforts by litigants to estop the Government from raising defenses based on claimants' failures to comply with governmental procedures due to misinformation from government agents." Sanz, 328 F.3d at 1319.  In Savoury v. U.S. Attorney General, 449 F.3d 1307, 1318 (11th Cir. 2006), the Eleventh Circuit again questioned whether the government could be equitably estopped, noting that "it is far from clear that the doctrine of equitable estoppel may even be applied against a government agency. The Supreme Court has never held that it may be." Recently, in Shuford v. Fidelity Nat. Property & Cas. Ins. Co., 508 F.3d 1337 (11th Cir. 2007), the Eleventh Circuit applied the holding in Office of Personnel Management v.

---

[20]  Doc. 53 at 12.

Richmond, 496 U.S. 414, 424-34, 110 S.Ct. 2465, 2471-76, 110 L.Ed.2d 387 (1990) (finding that equitable estoppel is unavailable in a claim against the government for funds from the public treasury), to conclude that a WYO insurer could not be equitably estopped from raising the defense that the insured had failed to comply with the SFIP's proof of loss requirement.  The court noted that estopping the insurer in this manner would allow "the erroneous letter from [the insurer regarding the time allowed for filing proof of loss] to alter the requirements for the disbursal of federal funds." Id. at 1343.  In the instant case, it likewise is true that estopping Nationwide from applying Zone V criteria to property that is in fact located in Zone V would "alter the requirements for the disbursal of federal funds." Thus it is highly doubtful that Nationwide may be equitably estopped in this case.

Nevertheless, assuming arguendo that equitable estoppel is available against Nationwide in the context of this NFIP case, the court concludes that Nationwide's actions do not support applying the doctrine in this instance.  A traditional equitable estoppel claim requires the proponent to establish three elements: (1) "words, acts, conduct or acquiescence causing another to believe in the existence of a certain state of things"; (2) "wilfulness or negligence with regard to the acts, conduct or acquiescence"; and (3) "detrimental reliance by the other party upon the state of things so indicated." Tefel v. Reno, 180 F.3d 1286 (11th Cir. 1999).  A claim of estoppel against the government further requires establishing that the government or its agents engaged in affirmative misconduct. See United States v. McCorkle, 321 F.3d 1292, 1297 (11th Cir. 2003).  Affirmative misconduct requires more than governmental negligence or inaction. Id.  The Eleventh Circuit has also observed the that Supreme Court's decisions indicate that even if equitable estoppel may be asserted against the government, its application is only warranted in extreme cases where "affirmative and egregious misconduct by government agents exists." Sanz, 328 F.3d at 1319-20 (emphasis added).  Here, even assuming that the FIA failed to respond to Perdido Sun's protest and that such failure somehow should be attributed to Nationwide or that Nationwide should have but failed to timely correct the SFIP to reflect the actual Zone VE status, neither may be fairly characterized as rising to the level of "affirmative and egregious" misconduct. Id.  Rather, at most any act or omission constitutes governmental negligence or inaction.

**CONCLUSION**

Because the evidence before the court shows that there is no genuine issue of material fact remaining for trial and that Nationwide is entitled to judgment as a matter of law, Nationwide's motion for summary judgment is granted. See Celotex Corp., 477 U.S. at 322. Perdido Sun's cross motion for partial summary judgment is denied.

Accordingly, it is hereby ORDERED:

1.      Defendant Nationwide Mutual Fire Insurance Company's motion for summary judgment (doc. 45) is GRANTED, and plaintiff Perdido Sun Condominium Association, Inc.'s cross motion for partial summary judgment (doc. 42) is DENIED. Plaintiff's claims are DISMISSED, with prejudice.

2.      Consistent with this order, the clerk of court is directed to enter summary judgment in favor of defendant. Plaintiff shall take nothing further by this action and hence goes without day.

3.      Costs shall be taxed against plaintiff.

DONE and ORDERED this 12th day of March, 2008.

s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**